UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re | Case No. 07-27846 |
| BRIAN CHRISTOPHER WHITELAW, | Chapter 7 |
| Debtor. | |
| AMERICAN STANDARD INSURANCE CO., | |
| Plaintiff, | |
| v. | Adversary No. 07-2282 |
| BRIAN CHRISTOPHER WHITELAW, | |
| Defendant. | |

---

MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

The plaintiff, American Standard Insurance Company, filed an adversary proceeding under 11 U.S.C. § 523(a)(6) seeking a determination that its subrogation claim is excepted from the debtor's discharge. The plaintiff moved for summary judgment on the grounds that previous state court findings and conclusions have preclusive effect in this court. The defendant opposed the motion for summary judgment.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons stated below, the plaintiff's motion is denied.

BACKGROUND

The following relevant facts are not disputed. On November 4, 1993, while operating Dawn Harrison's vehicle, the debtor ran a red light and collided with a vehicle at West Capital Drive and West Fond du Lac Avenue in Milwaukee. He then fled the scene westbound on West

Capital Drive when he ran a second red light at North 51st Street, colliding with a second vehicle. The debtor then fled the scene on foot before being apprehended. The plaintiff, American Standard Insurance Company provided collision insurance to Lisa Harrison, the daughter of Dawn Harrison and the driver of the vehicle. At the time of the incident, the debtor and Lisa Harrison were dating.

On March 27, 1998, a civil trial was held before the Honorable Francis T. Wasielewski in Milwaukee County, Case No. 97CV3614. At the conclusion of the trial, Judge Wasielewski issued Findings of Fact and Conclusions of Law dated April 28, 1998. Judge Wasielweksi found the damages suffered by the insurance company as a result of the automobile collision were stipulated to by the parties, as was the fact that the debtor was operating the insured motor vehicle at the time of the collision and that his negligence caused said collision. (Milwaukee County Case No. 97CV3614, Findings of Facts and Conclusions of Law dated April 28, 1998, ¶ 9). The court also made the following relevant findings:

> 3. That within approximately a month after the accident defendant made a statement, over the phone, to German Banda, who is a claims adjuster for American Family Insurance Company, and Mr. Banda, contemporaneously with this telephone conversation with Mr. Whitelaw, made notes with respect to Mr. Whitelaw's answers to his questions, which notes were admitted into evidence and corroborate by the testimony of German Banda;
>
> 4. That the essence of the statements made by Mr. Whitelaw to Mr. Banda during said telephone interview, was that on November 4, 1993, Mr. Whitelaw obtained the keys to the insured automobile for the purpose of retrieving his jacket from said automobile, and that the defendant took the automobile at that time, without the permission of the insured, Lisa Harrison, and with the intention of returning it before she found out he had taken it, and that he had the accident before he was able to return the auto to Lisa Harrison;
> . . .
>
> 6. That, on or about December 17, 1993, American Family's insured, Lisa Harrison, did execute an affidavit to the effect that she was the principal driver of the 1991 Ford Escort, and that she did not give anyone, and particularly Brian Whitelaw, permission to drive her auto on the day of the automobile collision;

. . .

> 8. That defendant and Lisa Harrison testified during the trial that, in fact Brian Whitelaw did have Lisa Harrison's permission to drive said automobile on the day of the automobile accident in November of 1993, and that said Brian Whitelaw had driven said automobile on numerous previous occasions;

(Milwaukee County Case No. 97CV3614, Findings of Facts and Conclusions of Law dated April 28, 1998). The court concluded:

> That the statements made by defendant to American Family's adjuster, German Banda, at a point in time approximately one month after the automobile collision, in which he stated he did not have permission to operate the insured auto are more likely to be true than statements made during the trial of this action;
>
> That the affidavit made by American Family's insured, Lisa Harrison, with respect to the lack of permission by her to the defendant to operate her motor vehicle is more likely to be true than her testimony to the contrary during the trial;

(Milwaukee County Case No. 97CV3614, Findings of Facts and Conclusions of Law dated April 28, 1998). The state court determined American Standard Insurance Company was entitled to a judgment against the debtor in the amount of $6,293.62, plus court costs and disbursements of $394.00, for a total of $6,687.62, finding "said damages having been caused by the negligent operation of the insured motor vehicle by defendant." The balance owed the plaintiff as of the date of this adversary proceeding was $14,197.08, including interest on the state court judgment.

ARGUMENT

The plaintiff argues the debt is excepted from discharge under 11 U.S.C. § 523(a)(6) because the debt was incurred as a direct result of the debtor's willful and malicious actions; namely, the stealing of the insured's vehicle. The debtor's actions were willful because he intended to drive the vehicle without the owner's permission. While he may not have intended to steal the vehicle for the purpose of inflicting damages to the vehicle, the taking of the vehicle without permission, as definitely determined by the state court, is a wrongful act sufficient to

3

deny discharge for the consequences of that act.  *See In re Schultz*, 89 B.R. 28, 29 (Bankr. E.D. Wis. 1988) (holding "intent to harm" under "malicious" can include commitment of wrongful act with no intent to cause injury, but in which injury is in fact inflicted).  All elements of collateral estoppel have been met in this case.  The issue of whether the debtor operated the insured's vehicle without her permission –  the same issue in this adversary proceeding – was fully litigated and the debtor was fully represented by counsel at the trial.  The fact that the debtor may have intended to return the vehicle without the owner's knowledge or without inflicting damage to the vehicle is immaterial.  *See Matter of Donny*, 19 B.R. 354, 359 (Bankr. W.D. Wis. 1982 ) (holding debtor's intention to restore converted funds at later date did not excuse his wrongful exercise of dominion over property).

While not disputing the underlying facts, the debtor takes issue with the plaintiff's characterization of those facts.  According to the debtor, because the state court judgment was based upon negligence, not willful and malicious injury to the property of another, there is not an identity of issues between the judgment and this action for nondischargeability.  Issue preclusion is therefore not applicable.  The state court finding that the debtor did not have permission to drive his girlfriend's mother's car enabled the plaintiff to obtain a judgment for subrogation.  The state court action was merely based on negligent damages caused by non-permissive use for the purpose of determining insurance coverage.  The damages were thus awarded based upon the debtor's negligent operation of the insured's motor vehicle.  The debtor denies that he stole the vehicle in question and that he acted with the requisite intent required for a finding of nondischargeability based upon section 523(a)(6).  The non-permissive use of the vehicle was a technical conversion and was intended to be temporary.  The debtor also argues the plaintiff's adversary proceeding should fail under the doctrine of laches because the judgment was obtained

4

Case 07-02282-mdm    Doc 16    Filed 05/30/08    Page 4 of 8

in 1998 and plaintiff has invested little effort to collect in the intervening decade.[1]

DISCUSSION

To prevail on a motion for summary judgment the moving party must show there is no genuine issue of material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine if there is a genuine issue of material fact all facts are construed in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citations omitted). Additionally, all reasonable inferences are drawn in favor of that party. *Id*. However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id*. at 283 (citations omitted).

The doctrine of issue preclusion prevents relitigation of an issue of fact or law previously decided in a judicial proceeding provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding. *Allen v. McCurry*, 449 U.S. 90, 94-95, 101 S.Ct. 411, 414-415 (1980). Additionally, issue preclusion applies in dischargeability proceedings in bankruptcy. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

First, as a matter of full faith and credit a federal court must apply the forum state's law of issue preclusion when it determines the preclusive effect of a state court judgment. 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998). Additionally, the forum state's law of issue preclusion applies in determining the

---

[1]The debtor's request for the application of the doctrine of laches will not be considered by the court at this time because the debtor has filed neither a motion for summary judgment nor a motion for dismissal of the action.

dischargeability of debt. *Bukowski v. Patel*, 266 B.R. 838, 842 (E.D. Wis. 2001) (citing *Matter of Bulic*, 997 F.2d 299, 304 n. 6 (7th Cir. 1993)). Therefore, whether issue preclusion applies must be determined according to Wisconsin law.

In Wisconsin courts, issue preclusion is a two-step analysis. The first step is to determine whether a litigant against whom issue preclusion is asserted is in privity with a nonparty or has sufficient identity of interests to comport with due process. *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 224, 594 N.W.2d 370 (1999). The debtor was a party to both previous actions, so privity is not a question the court needs to address.

The next step in issue preclusion analysis is whether applying issue preclusion comports with principles of fundamental fairness. This is generally a discretionary decision, although some of the factors the court is to consider in determining fairness present a question of law. *Paige K.B.*, 226 Wis. 2d at 225.

The factors that courts may consider when undertaking the second step of issue preclusion are: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action? *Michelle T. v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327 (1993) (footnote omitted). Generally, matters decided or opined upon that are not necessary to

6

the result in the earlier case are not subject to issue preclusion in the later case.

Clearly, the debtor could have, as a matter of law, obtained review of the state court judgment. Likewise, the quality or extensiveness of proceedings between this court and the state court are similar. The more pressing question for this court is whether or not the legal issue at hand involves two distinct claims or intervening contextual shifts in the law.

Section 523(a)(6) prevents discharge of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not just a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974 (1998). As noted by one court, "the *Geiger* standard is extremely strict for creditors to meet. ... Exceptions to discharge are supposed to hook 'bad actors,' not those who merely act poorly." *In re Whiters*, 337 B.R. 326, 339 (Bankr. N.D. Ind. 2006). A willful and malicious injury does not follow as a matter of course from every act of conversion, without reference to the circumstances. *Id.* at 338. "There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." *Id*. Thus, the cases cited above that pre-date *Geiger* are of questionable authority in light of the standards established by the Supreme Court.

There is nothing in the state court findings regarding the debtor's intentions as they pertained to his taking of the vehicle without permission, and this court cannot, as a matter of law, state that all takings without permission that lead to damages satisfy the willfulness and maliciousness elements of 11 U.S.C. § 523(a)(6). In the previous action, the parties stipulated that the damages to the vehicle which incurred *after* the taking were caused by the negligence of the debtor, so the court is precluded from finding at the summary judgment stage that the
7

elements of section 523(a)(6) were met at that later point in time.  *Cf. In re Kaperonis*, 156 B.R. 736 (Bankr. S.D.N.Y. 1993) (pre-*Geiger* case holding accident which occurred while debtor was "drag racing" gave rise to willful and malicious injury).  But whether the debtor took Ms. Harris' car with the spiteful intent to demolish it or with the intent to drive home and back was not necessary to the result in the state court action.  He would have been liable to the insurance company in either instance, but only the former would lead to a nondischargeable debt under the standards set forth in *Geiger*.  There was no motivation to litigate the issue of intent in the state action; there is sufficient reason to litigate that issue in the instant case, which meets the standards of *Michele T. v. Crozier* to bar issue preclusion at this stage of the proceedings.  Because a genuine issue of material fact exists regarding the debtor's intention when he took and operated the vehicle without permission of the owner, the plaintiff's motion for summary judgment is denied.  A separate order consistent with this decision will be entered and further proceedings will be scheduled.

May 30, 2008

                                        Margaret Dee McGarity
                                        Chief Judge, U.S. Bankruptcy Court